# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| MARIXIA MALDONADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-3379-CV-S-DW |
| | ) | |
| CARL ROSENKRANZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Defendants' motion for summary judgment (Doc. 53). Defendants seek summary judgment in their favor on each of Plaintiff's six counts alleging separate instances of unlawful discrimination in violation of Title VII and 42 U.S.C. § 1981. Counts I, II and III allege violations of Title VII by Defendant Ozarks Area Community Action Corporation ("OACAC") only and Counts I-VI claims violations of § 1981 by Defendant Carl Rosenkranz ("Rosenkranz") and Defendant OACAC. For the following reasons, Defendants' motion is granted as to all Plaintiff's claims.

I.  Background

Marixia Maldonado ("Maldonado") was hired by OACAC as a substitute teacher assistant at the Broadway 2 Head Start Center in December 1993. (Def. Ex. 1.) Since that date Maldonado has applied for and received multiple positions that have either been promotions or lateral moves within the Head Start system.[1] (Def. Ex. 2-14.) The six counts in Plaintiff's complaint relate to six

---

[1] Plaintiff was promoted to teacher assistant at Douglas 1 in November 1994. Plaintiff was selected as teacher assistant at Broadway 3 in January 1995. In September 1996, Plaintiff was selected as teacher assistant at Douglas 1. Later that month Plaintiff was selected as

occasions where Plaintiff applied for[2], but was not selected for the position. Plaintiff alleges that she was not selected because of illegal discrimination based upon her national origin and race.

OACAC's hiring process consists of: (1) a job posting; (2) an application period; (3) a screening process to select candidates for interviews; (4) interviews conducted by an interview panel; (5) a recommendation by the panel to the Head Start Program Director; (6) review of the recommendation by the Head Start Program Director; (7) approval for the hiring of the candidate by the Head Start Program Director; and (8) a form letter from the Program Director sent to all candidates who were not selected. (Def. Ex. 93, 100.) This process was followed for each of the positions referenced in Plaintiff's complaint. (Affidavit of Carl Rosenkranz, Affidavit of Patti Martin.) The relevant facts pertaining to each position are:

    A.    <u>Count I: February 2002 Lead Teacher position at Stewart Head Start Center</u>

The job announcement for this position stated: "Requires high school diploma or GED; CDA[3] or Early Childhood degree preferred, 30 college credit hours with 6 child related, or 12 months experience and 6 hours child related college hours. Experience working with preschool children and supervisory experience preferred." (Pl. Ex. JJ, D-RESP 553.) Nine applications were received for this position. (Def. Ex. 19.) The applicants were rated and six applicants were selected for

---

business aide at Douglas 1. Plaintiff was promoted to substitute teacher at Broadway during the summer session of 1997. In April 1998, Plaintiff was selected as a teacher assistant at Broadway 3. The same year, Plaintiff was selected as teacher assistant at OACAC's Kearney Head Start Program in Springfield.

[2] As Defendants note, Plaintiff did not actually apply for the position at issue in Count II, December 2002 Lead Teacher Position at Stewart 6 Head Center. (Def. Ex. 34.)

[3] CDA refers to a Child Development Associate Credential conferred by the Council for Early Childhood Professional Recognition.

interviews. (Def. Ex. 20.) The interview panel was comprised of: Anita Hansen, Area Supervisor; Kimberly James, Area Supervisor; and Emberly Lashley, a Head Start parent. (Def. Ex. 21). Plaintiff was selected for an interview which was conducted by this panel. (Def. Ex. 22.) Upon completion of the interviews, the panel submitted a recommendation to Patti Martin, the Head Start Program Director. (Def. Ex. 23.) The interview panel noted that Plaintiff had insufficient experience working with Individualized Education Programs ("IEPs"), parents and supervisory experience. (Def. Ex. 24.) Teresa Rust was recommended by the panel because she: (1) had Lead Teacher experience, (2) had supervisory experience, and (3) had more experience with IEPs than any other applicant. (Def. Ex. 25.)

      B.    <u>Count II: December 2002 Lead Teacher Position at Stewart 6 Head Start Center</u>

The job announcement for this position stated: "Experience with preschool children and supervisory experience preferred." Three applications were received for this position. (Def. Ex. 32.) Plaintiff did not submit an application for this position. (Def. Ex. 34.) The interview panel for this position was comprised of: Louise Turner, Area Supervisor, and Erica Adams, Stewart Head Start Center Director. (Def. Ex. 33.)

      C.    <u>Count III: January 2003 Temporary Lead Teacher Position at Stewart 4 Head Start Center</u>

Five individuals submitted applications for this position, including Plaintiff. (Def. Ex. 46.) The applications were screened and three individuals were selected for interviews; Plaintiff was one of the three selected. (Def. Ex. 47.) The interview panel was comprised of Louise Turner, Erica Adams, and Sara Potter—the teacher whose position was to be filled. (Def. Ex. 48.) The interview panel recommended Tina Murray for this position because it felt she was best suited for the job.

(Def. Ex. 49.)

Louise Turner contacted Plaintiff and informed her that she was not selected for the position. She related that Tina Murray was selected because she "clicked" with the staff during the interview. (Def. Ex. 50.) By written letter, Plaintiff inquired as to the meaning of the word "clicked" and received a written reply from Ms. Turner explaining the term "click" as "referring to individual personalities that balance the composition of the team at Stewart 4." Ms. Turner emphasized that the use of the term as it related to this position did not indicate that Plaintiff was not a good team player in her current position specifically stating that she felt Plaintiff "work[s] well with the children and function[s] as a team member in [her] present work site." (Def. Ex. 52.) Plaintiff also met with Ms. Turner and Ms. Adams and discussed Ms. Turner's written reply. (Def. Ex. 53.)

D. Count IV: June 2003 Teacher Position at Broadway 4 Head Start Center

The job announcement for this position stated: "Requires high school diploma or GED; CDA or Early Childhood degree preferred. Experience working with young children." (Pl. Ex. MM.) Ten individuals applied for this position. (Def. Ex. 58.) Seven were selected for interviews, including Plaintiff. (Def. Ex. 60.) The interview panel was comprised of: Angela Wilkinson, Julie Harris and Anita Hansen.[4] (Def. Ex. 61.) The panel recommended Stacia Powers for the position. (Def. Ex. 63.) Anita Hansen contacted Plaintiff and informed her that another individual better suited to the position had been selected. (Def. Ex. 64.)

E. Count V: June 2003 Lead Teacher Position at Grant Early Head Start Center

The announcement for this position stated: "Requires high school diploma or GED; CDA or

---

[4] Neither party provided the titles for the individuals on this interview panel.

Early Childhood degree preferred. Experience working with infants/toddlers required." (Pl. Ex. NN.) Eight individuals submitted applications for this position. (Def. Ex. 69.) Seven individuals were selected for interviews, including Plaintiff. (Def. Ex. 70.) The interview panel was comprised of: Rhonda Richards, Julie Martin, and Helen Swadley.[5] (Def. Ex. 71.) At the interview, Plaintiff stated she had little experience working with infants and toddlers. (Def. Ex. 75.) The panel recommended Glenda Sharp for the position. (Def. Ex. 72.)

    F.    <u>Count VI: June 2003 Teacher Position at Grant Early Head Start Center</u>

The announcement for this position stated: "Requires high school diploma or GED; CDA or Early Childhood degree preferred. Experience working with infants/toddlers required." (Def. Ex. 80.) Nine individuals submitted applications for this position. (Def. Ex. 81.) Seven individuals were selected for interviews, including Plaintiff. (Def. Ex. 82.) The interview panel was comprised of: Rhonda Richards, Julie Martin, and Helen Swadley. (Def. Ex. 83.) At the interview, Plaintiff stated she had little experience working with infants and toddlers and that change can be a little stressful to her. (Def. Ex. 88.) The panel recommended Emily Huston and Donna Dotson for the position. (Def. Ex. 84.)

II.    <u>Summary Judgment</u>

    A.    <u>Local Rule 56.1</u>

Local Rule 56.1(a) states:

> Suggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party

---

[5] Neither party provided the titles for the individuals on this interview panel.

relies, and, if applicable shall state the paragraph number in the movant's listing of facts that is disputed. All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party.

Plaintiff has not complied with this rule. Plaintiff's Suggestions in Opposition contain a section title "Statement of Material Uncontroverted Facts" and contains numbered paragraphs asserting various facts. Although, this section starts, in subsection A., by addressing Defendant's asserted facts in compliance with Rule 56.1, the remainder of this section does not clearly distinguish whether Plaintiff is admitting or denying facts asserted by Defendants. Defendants, in their Reply Suggestions, have attempted to clarify Plaintiff's response with limited success.

Plaintiff's attached exhibits and citations thereto were also a source of confusion for the Court. The Court was forced to wade through the numerous unnumbered pages of particular exhibits in order to identify the specific document containing information referenced in the brief. The large number of irrelevant and duplicate documents submitted make it abundantly clear that counsel for the Plaintiff made little or no effort to organize the documents submitted in support of Plaintiff's Suggestions in Opposition.

According to local rule, the moving party's statement of facts is deemed admitted if unchallenged by the opposing party. Local Rule 56.1(a); see also Northwest Bank & Trust Co. v. First Illinois Nat'l Bank, 354 F.3d 721, 724-25 (8th Cir. 2003) (holding it was not an abuse of discretion to deem that plaintiff had admitted all of the defendants' statements of material facts as a sanction for noncompliance with local summary judgment rules). Though Rule 56.1 is written in mandatory terms, the Court finds that deeming all of Defendants' statements of facts admitted, and thereby disregarding the evidence cited by Plaintiff in her brief, is too harsh a sanction. In the

6

interests of justice, the Court excuses the deficiencies in Plaintiff's brief.

B.  Standard of Decision

Summary judgment is appropriate if there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). "The burden of demonstrating that there are no genuine issues of material fact rests on the moving party." Winthrop Resources Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004). The Court reviews the evidence and draws reasonable inferences in "the light most favorable to the nonmoving party." Gilmore v. AT&T, 319 F.3d 1042, 1046 (8th Cir. 2003). While "summary judgment should seldom be granted in employment discrimination cases, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case." Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 615-16 (8th Cir. 1997) (quotations and citations omitted).

Disparate treatment claims under Title VII and § 1981 are analyzed in the same manner—by resort to the McDonnell Douglas burden-shifting framework. Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997). "Under the McDonnell Douglas framework, a presumption of discrimination is created when the plaintiff meets [her] burden of establishing a *prima facie* case of employment discrimination. A minimal evidentiary showing will satisfy the burden of production." Pope v. ESA Servics, Inc., 406 F.3d 1001, 1006-7 (8th Cir. 2005). Once a plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to articulate "a legitimate, non-discriminatory reason for its adverse employment action." Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir. 1994). If the employer meets its burden, "the presumption disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination." Pope, 406 F.3d at 1007.

7

In order to establish a prima facie case of discrimination in a failure-to-promote case, the plaintiff must show that: (1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) a similarly-situated candidate, not part of the protected group, was hired for the position instead. Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996). The record clearly establishes the first three elements as to Counts I and III-VI. Because Plaintiff did not apply for the position at issue in Count II, she is unable to satisfy her burden at this stage.

At the *prima facie* stage, the plaintiff's burden—to show she is similarly situated to other candidates—is not onerous. Wheeler v. Aventis Pharm., 360 F.3d 853, 857 (8th Cir. 2004). Assuming, without deciding, that all the other candidates considered for the positions at issue met the minimal qualifications for the positions, Plaintiff has met her burden on the "similarly situated element." See Ottman v. City of Independence, Mo., 341 F.3d 751, 757 (8th Cir. 2003) (finding candidates similarly situated where both met the minimum qualifications for the position). As Plaintiff has satisfied all four elements required to establish a *prima facie* case[6], the burden shifts to OACAC to proffer a legitimate, non-discriminatory reason for not selecting Maldonado for any of these positions. Williams, 14 F.3d at 1309.

"The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." Floyd v. Mo. Dept. of Soc. Servs., Div. of Family Servs., 188 F.3d 932, 936 (8th Cir. 1999). OACAC has presented evidence that the selected candidates were more qualified than Maldonado; this justification satisfies the employer's

---

[6] But as noted earlier, only with respect to Counts I and III-VI.

burden of production. Accordingly, the burden shifts to Maldonado to produce evidence sufficient to create a genuine issue of material fact as to whether OACAC's proffered reason was a pretext for discrimination. Pope, 406 F.3d at 1007.

Evidence that an employer promoted a less qualified candidate can support a finding that the employer's nondiscriminatory reasons for the promotion were pretextual. Duffy v. Wolle, 123 F.3d 1026, 1037-38 (8th Cir. 1997). However, an inference of intentional discrimination does not arise when a comparison of relative qualifications reveals the plaintiff is "similarly qualified" or "not as qualified" as the selected candidate. See Chock v. Northwest Airlines, Inc., 113 F.3d 861, 864 (8th Cir. 1997). In other words, "subjectivity alone does not render an employment decision infirm." Brooks v. Ameren U.E., 345 F.3d 986 (8th Cir. 2003). The Eighth Circuit has oft repeated the admonition that courts do not "sit as super-personnel departments reviewing the wisdom or fairness of judgments made by employers, except to the extent that those judgments involve intentional discrimination." See, e.g., Davis v. KARK-TV, Inc., 421 F.3d 699, 705 (8th Cir. 2005) (internal citations omitted).

Maldonado fails to produce any evidence suggesting that OACAC's proffered reason for its hiring decision was pretextual.[7] Plaintiff merely asserts that she was better qualified than the selected candidates. In Davis, a case involving similar assertions by the plaintiff, the Eighth Circuit found this insufficient to meet the burden of demonstrating that the employer's proffered reason was a pretext for unlawful discrimination. Id. Furthermore, after comparing the selected candidates'

---

[7] The Court notes that a plaintiff is not required to produce new or additional evidence at this stage. A plaintiff may simply rely on the evidence produced at the *prima facie* stage to establish pretext. Here, Plaintiff has failed to produce the necessary evidence at either stage.

9

objective qualifications with Maldonado's, it is apparent that none of them were "substantially less qualified" than Maldonado. Thus, given the lack of evidence of pretext from Maldonado, the Court will not second guess OACAC's hiring decisions.

The Court finds that Defendants have met their summary judgment burden and established that there is no genuine issue of material fact for trial.

III.     Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment.

IT IS SO ORDERED.

                                                 /s/ DEAN WHIPPLE
                                                   Dean Whipple
                                          United States District Court

Date:   October 18, 2005